1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRITTNEY FLOW-SUNKETT, GLENN          No.  2:19-cv-1009 KJM KJN P
     SUNKETT,
12
                     Plaintiffs,
13                                         ORDER
            v.
14
     RALPH DIAZ, et al.,
15
                     Defendants.
16

17   I.  Introduction

18          Plaintiffs, a state prisoner and his wife, both proceeding pro se, filed this civil rights action

19   seeking relief under 42 U.S.C. § 1983, and the wife paid the court's filing fee.  Because the nature

20   of plaintiffs' allegations concern prison conditions and seek relief from officers of a government

21   entity, this case was deemed to be a prisoner case, and the matter was referred to a United States

22   Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

23          On July 18, 2019, the undersigned recommended that this action be dismissed because this

24   action was duplicative of an action filed in the Fresno division of this court by the prisoner

25   plaintiff.  However, since that time, plaintiffs' Fresno action has been dismissed.  Good cause

26   appearing, the findings and recommendations are vacated.

27          On June 6, 2019, plaintiffs' complaint was dismissed, and plaintiffs were granted leave to

28   file a pleading bearing both their signatures.  On June 19, 2019, plaintiffs filed a motion to amend

accompanied by an amended complaint bearing both signatures.  Because plaintiffs were entitled to amend under Rule 15(a) of the Federal Rules of Civil Procedure, plaintiffs' motion to amend is unnecessary and is denied as moot.  This action proceeds on plaintiffs' amended complaint.

As discussed below, the amended complaint is dismissed with leave to amend.

II.  Screening Standards

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).[1]  In its review the court must identify any cognizable claims, and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

---

[1]  It is undisputed that plaintiff Glenn Sunkett is a state prisoner, and both plaintiffs challenge the conditions of his confinement at Kern Valley State Prison, where Mr. Sunkett is housed.  It is unclear whether a court may screen a complaint brought jointly by a nonprisoner and where the nonprisoner paid the court's filing fee.  However, a district court may dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

III.  Plaintiffs' Amended Complaint

The gravamen of plaintiffs' pleading is that plaintiffs have been wrongfully denied family visits based on a July 30, 2009 Mendocino County Jail Disciplinary Report (ECF No. 12 at 16) improperly issued against Mr. Sunkett.[2]  Plaintiffs argue that the Mendocino County Superior

---

[2]  Inmate applications for family visits are evaluated under 15 C.C.R. § 3177.  Accord, CDCR Department Operations Manual ("DOM") § 54020.33.1.  Title 15 C.C.R. § 3177 provides in pertinent part:

> (b) Family visiting is a privilege.  Eligibility for family visiting shall be limited by the assignment of the inmate to a qualifying work/training incentive group as outlined in section 3044.
>
> (1) Family visits shall not be permitted for inmates convicted of a violent offense involving a minor or family member or any sex offense, which includes but is not limited to the following Penal Code sections: 187 (when the victim is a family member as defined in Section 3000 or minor); 192 (when the victim is a family member or minor); 243.4; 261; 261.5; 262; 264.1; 266c; 266j; 273a; 273d; 273.5; 273.6; 285; 286; 288; 288a; 288.2; 288.5; 289; 289.5; 311.1; 311.2; 311.3; 311.4; 313.1; 314; or 647.6.

////

3

1  Court dismissed the attempted escape charges filed against Mr. Sunkett.[3]  Thus, the allegedly

2  incomplete Mendocino County Jail Disciplinary Report added to Mr. Sunkett's central file by

3  county jail staff upon his transfer to state prison should not be used to preclude family visits under

4  California Code of Regulations, title 15, Section 3177.  Plaintiffs allege violations of their First

5  (Free Exercise), Eighth (deliberate indifference) and Fourteenth (Due Process) Amendment

6  rights, as well as myriad violations of state law and regulations and the California Constitution.

7  IV.  Discussion

8         Plaintiffs' amended complaint suffers from several deficiencies as discussed below.

9         A.  Federal Claims

10        First, the undersigned observes that any defendant's reliance on an invalid jail disciplinary

11 or rules violation report to deny plaintiffs family visits under California Code of Regulations, title

12 15, Section 3177 does not, without more, support an actionable claim.  Prisoners are not protected

13 from false charges or official reliance on such charges.  See Buckley v. Gomez, 36 F. Supp. 2d

14 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be free from wrongfully

15 issued disciplinary reports), aff'd without opinion, 168 F.3d 498 (9th Cir. 1999).  Prisoners do not

16

17
              (A) Inmates may be prohibited from family visiting where substantial
18            documented evidence or information of the misconduct described in
              section 3177(b)(1) exists, without a criminal conviction. The
19            evidence or information appropriate for the purpose of this regulation
              shall include rule violation reports as well as the standard described
20            in section 3173.1.

21            . . .

22            (D) Family visiting shall be restricted as necessary to maintain order,
              the safety of persons, the security of the institution/facility, and
23            required prison activities and operations, pursuant to section 3170.

24 15 C.C.R. § 3177.

25 [3]  Mr. Sunkett's criminal charges for attempted escape in Mendocino were dismissed, but
   plaintiffs do not allege that he was acquitted of attempted escape.  Mr. Sunkett was found guilty
26 in the 2009 jail disciplinary, but it is unclear whether he challenged the 2009 disciplinary in state
   or federal court because plaintiffs do not allege that the 2009 jail disciplinary was set aside or
27 overturned by a state or federal court.  In any event, none of the named defendants were involved
   in the imposition or hearing of the 2009 jail disciplinary.
28

                                          4

have a right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under § 1983.  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state constitutional claims."); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections . . . are provided.").

In addition, prisoners generally have no due process right to a particular prison classification.  Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976).  Alleged deprivations of rights arising from prison officials' classification decisions do not give rise to a federal constitutional claim encompassed by the Fourteenth Amendment.  Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  State statutes and regulations give rise to an interest protected by the Fourteenth Amendment only where the restraint on a prisoner's liberty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 483 (1995).  Inmates have no federal constitutional right to particular procedures established by state law.  Toussaint v. McCarthy, 801 F.2d 1080, 1096-97 (9th Cir. 1986), abrogated in part on other grounds, Sandin, 515 U.S. at 472.

Second, "[i]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits."  Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) (en banc) (citing, inter alia, Kentucky v. Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (the Due Process Clause does not guarantee a right of unfettered visitation).)  In Gerber, the Ninth Circuit held that "while the basic right to marry survives imprisonment, . . ., most of the attributes of marriage -- cohabitation, physical intimacy, and bearing and raising children -- do not."  Gerber, 291 F.3d at 621; cf. Overton v. Bazzetta, 539 U.S. 126, 131-32 (2003) (declining to decide whether the right to intimate association survives incarceration because the "challenged

regulations bear a rational relation to legitimate penological interests."). Thus, plaintiffs'

contention that they have a constitutional right to family visits is unavailing because the benefits

of marriage do not survive incarceration.[4]  "The fact that California prison officials may choose to

permit some inmates the <u>privilege</u> of conjugal visits is simply irrelevant to whether there is a

constitutional right to conjugal visits . . . while in prison."  <u>Gerber</u>, 291 F.3d at 621-22 (emphasis

added) (§ 3177(b) states "[f]amily visiting is a privilege.").

Third, the operative pleading fails to state a claim for interference with plaintiffs' religious

practices.  The Free Exercise Clause of the First Amendment provides, "Congress shall make no

law . . . prohibiting the free exercise" of religion U.S. Const., Amend. I.  Any assertion that

§ 3177 runs afoul of that clause is defeated by the U.S. Supreme Court's decision in <u>Employment</u>

<u>Division v. Smith</u>, 494 U.S. 872 (1990).  There, the Court held that generally-applicable laws that

incidentally burden a religious practice do not violate the Free Exercise Clause.  <u>Smith</u>, 494 U.S.

at 878; <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 714 (2005).  Because section 3177 does not prohibit

conjugal visitation on the basis of religion, but rather based on crimes and other penological

security concerns, it does not violate the Free Exercise Clause.  <u>Turner v. Safley</u>, 482 U.S. 78, 95

(1987) (holding that a prison inmate retains those constitutional rights that are not inconsistent

with his status as a prisoner or with the legitimate penological objectives of the correctional

system); <u>Noguera v. Rowland</u>, 1991 WL 148766 (9th Cir. July 29, 1991) (holding that a

condemned inmate's claim to a right to conjugal visits under the Free Exercise Clause failed

because the inmate could not "show that the prison regulation prohibiting conjugal visits for

condemned inmates is not rationally related to a valid penological interest.")

Fourth, construing plaintiffs' claims under the Religious Land Use and Institutionalized

Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, also offers no relief.  RLUIPA provides:  "No

---

[4]  Plaintiff Mr. Sunkett retains the First Amendment right to free exercise of his religious faith, but that right "is limited by institutional objectives and by the loss of freedom concomitant with incarceration."  <u>Hartmann v. California Dep't of Corrections and Rehab.</u>, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987)).  To state a cognizable claim under the Free Exercise clause of the First Amendment, plaintiff Mr. Sunkett must allege facts which show that the challenged regulation is not valid or neutral with respect to religion.

government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling governmental interest" by "the least restrictive means."  42 U.S.C. § 2000cc-1(a)(1)-(2). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  Id. § 2000cc-5(7)(A).  For a RLUIPA claim, the prisoner must show that the government has imposed a substantial burden on his religious exercise.  A "substantial burden" is one that imposes a significantly great restriction or onus on religious exercise.  San Jose Christian College v. Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).

The U.S. Supreme Court and the Court of Appeals for the Ninth Circuit have not addressed whether a sincerely held religious belief requiring conjugal visits must be accommodated under RLUIPA.  But various lower courts have found that conjugal visits are subject to substantial restriction due to incarceration and need not be accommodated under RLUIPA.  Owens v. Kernan, 2016 WL 3361885 (E.D. Cal. June 16, 2016) (screening out, for failure to state a claim, challenge to § 3177 by prisoner serving life without parole); Martin v. Cate, 2014 WL 348442, at *3 (E.D. Cal. Jan. 31, 2014) (holding denial of conjugal visits to Christian prisoner based on status as a life prisoner was not cognizable under RLUIPA); Shields v. Foston, 2013 WL 3456964 (E.D. Cal. Jul. 9, 2013) (surveying district court decisions and finding § 3177 was narrowly tailored to accomplish the compelling government interest in enhancing prison security); Lucas v. Tilton, 2010 WL 431737 (E.D. Cal. Feb. 2, 2010) (finding the balance of equities did not support prisoner's request for a preliminary injunction "because the loss of intimate association is a well-known aspect of being imprisoned.")

Here, plaintiffs allege that they are denied family visits based on an improperly issued jail disciplinary report from the 2009 finding that Mr. Sunkett attempted an escape from the Mendocino County Jail.  Plaintiffs concede that the denial of conjugal visits was issued under state regulations, including DOM section 54020.33.1, but argue the regulations were improperly applied.  (ECF No. 12 at 8-9, citing Ex. N; ECF No. 1 at 77 (Ex. N) (CDC 128-B dated Nov. 28, 2017).)  The CDC 128-B issued thereafter confirms that family visits "shall be restricted as necessary to maintain order, the safety of persons, the security of the institution/ facility, and

required prison activities and operations, pursuant to section 3170 and DOM section 54020.33.1."
(ECF No. 1 at 77.)  Thus, plaintiff's allegations fail to state a claim for relief under RLUIPA
because "section 3177 is narrowly tailored to accomplish the compelling government objective of
enhancing prison security."  Shields, 2013 WL 345964, at *6.  See also Cutter, 544 U.S. at 722
("We do not read RLUIPA to elevate accommodation of religious observances over an
institution's need to maintain order and safety.  Our decisions indicate that an accommodation
must be measured so that it does not override other significant interests.").  Absent exceptional
circumstances not alleged here, the undersigned will not intervene in the day-to-day management
of prisons.  See, e.g., Overton, 539 U.S. at 132 ("We must accord substantial deference to the
professional judgment of prison administrators"); Sandin, 515 U.S. at 482-83 ("federal courts
ought to afford appropriate deference and flexibility to state officials trying to manage a volatile
environment.")

Fifth, the amended complaint fails to state a due process claim against persons who
processed or denied inmate appeals.  There is no constitutional right to a prison or jail
administrative appeal or grievance system in California, and therefore no due process liability for
failing to process or decide an inmate appeal properly.  See Ramirez v. Galaza, 334 F.3d 850, 860
(9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

Sixth, plaintiffs' cause of action based on an alleged "failure to investigate" also does not
state a cognizable federal civil rights claim.  "There is . . . no constitutional right to an
investigation by government officials."  Stone v. Dep't of Investigation of New York, 1992 WL
25202, *2 (S.D. N.Y. Feb. 4, 1992), citing Gomez v. Whitney, 757 F.2d 1005, 1006 (1985) ("no
instance where the courts have recognized inadequate investigation as sufficient to state a civil
rights claim unless there was another recognized constitutional right involved."); see also Page v.
Stanley, 2013 WL 2456798, at *8-9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim
alleging that officers failed to conduct thorough investigation of former prisoner's complaints
because he "had no constitutional right to any investigation of his citizen's complaint, much less a
'thorough' investigation or a particular outcome").  Absent an underlying violation of a
////

constitutional right by named defendants, plaintiffs' contentions that defendants fail or refuse to investigate plaintiffs' allegations do not state cognizable civil rights claims.

Seventh, to the extent plaintiffs attempt to raise a procedural due process challenge in connection with the 2009 jail disciplinary, or to substantively challenge such disciplinary, such challenges appear to be time-barred.  The statute of limitations for a § 1983 claim filed in California is two years, and it may be tolled for up to two years for the disability of imprisonment for certain plaintiffs.  See Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code §§ 335.1, 352.1, 357.  In addition, to the extent plaintiffs attempt to raise procedural due process challenges in connection with subsequent classification procedures, plaintiffs are advised that basic procedural due process protection requires notice and the opportunity to be heard "at a meaningful time and in a meaningful manner" prior to deprivation of an established interest.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 437 (1982); see also Barnett, 31 F.3d at 815 (prisoner only entitled to notice and an opportunity to be heard).  So long as Mr. Sunkett was provided notice of the reclassification procedure and afforded an opportunity to be heard, he was provided adequate procedural due process.

Finally, plaintiffs raise a "deliberate indifference" claim, ostensibly under the Eighth Amendment, based on their allegations that defendants "compelled" plaintiffs to undertake hunger strikes.  However, such allegations are unavailing because such hunger strikes were self-imposed, and not conditions that were caused by defendants.

For all of the above reasons, the undersigned finds that plaintiffs fail to state cognizable federal civil rights claims.

B.  Potential State Law Claims

Many of plaintiffs' claims are based on violations of prison regulations, state law, or the California Constitution.  (ECF No. 12, *passim*.)  Any violation of state law, state regulations, or rules and policies of the department of corrections, is not sufficient to state a claim for relief under § 1983.  As discussed above, to state a claim under § 1983, there must be a deprivation of federal Constitutional or statutory rights.  See Galen v. County of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not

state law.").  The court may exercise supplemental jurisdiction over state law claims, but plaintiffs must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367. Because this court has found that plaintiffs fail to state any cognizable federal claims, the court will not exercise supplemental jurisdiction over plaintiffs' putative state law claims.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (when federal claims are eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction).  Such dismissal does not preclude plaintiffs from pursuing such claims in state court.

V. Leave to Amend

In light of the authorities discussed above, it does not appear that plaintiffs can amend their pleading to state cognizable federal civil rights claims based on the alleged deprivation of family visiting under state regulations.  However, in an abundance of caution, and because plaintiffs are appearing pro se and have not had an opportunity to substantively amend their pleading, plaintiffs are granted leave to amend should plaintiffs be able to allege facts demonstrating a violation of their federal civil rights.

If plaintiffs choose to amend, plaintiffs must demonstrate how the conditions about which they complain resulted in a deprivation of their rights under the United States Constitution or other federal statute.  See e.g., West, 487 U.S. at 48.  Also, the complaint must allege in specific terms how each named defendant is involved.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiffs are informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This requirement exists because, as a general rule, an amended complaint supersedes the original complaint.  See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an

10

1  'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'"

2  (internal citation omitted)).  Once plaintiffs file a second amended complaint, the original

3  pleading no longer serves any function in the case.  Therefore, in the second amended complaint,

4  as in an original complaint, each claim and the involvement of each defendant must be alleged.

5       In the alternative, plaintiffs may opt to voluntarily dismiss this action and pursue their

6  claims in state court.

7  VI.  <u>Defendants' Motion to Dismiss</u>

8       On July 11, 2019, defendants filed a motion to dismiss this action based on insufficient

9  service of process.  Because the court has determined this case is a prisoner case, and has not yet

10 found plaintiffs stated a cognizable civil rights claim, defendants' motion is premature and is

11 dismissed without prejudice to renewal at a later date, if appropriate.

12      Accordingly, IT IS HEREBY ORDERED that:

13      1.  The findings and recommendations (ECF No. 21) are vacated;

14      2.  Plaintiffs' motion to amend (ECF No. 11) is dismissed as moot;

15      3.  Defendants' motion (ECF No. 16) is dismissed without prejudice;

16      4.  Plaintiffs' amended complaint is dismissed; and

17      5.  Within thirty days from the date of this order, plaintiffs shall complete the attached

18 Notice of Amendment and submit the following documents to the court:

19           a.  The completed Notice of Amendment; and

20           b.  An original and one copy of the Second Amended Complaint.

21 Plaintiffs' second amended complaint shall comply with the requirements of the Civil Rights Act,

22 the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint

23 must also bear the docket number assigned to this case and must be labeled "Second Amended

24 Complaint."

25 ////

26 ////

27 ////

28 ////

1         Failure to file an amended complaint in accordance with this order may result in the

2   dismissal of this action.  In the alternative, plaintiffs may opt to voluntarily dismiss this action

3   and pursue their claims in state court.

4   Dated:  March 11, 2020

5

6                                                KENDALL J. NEWMAN
                                            UNITED STATES MAGISTRATE JUDGE

7   /sunk0816.vac+

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRITTNEY FLOW-SUNKETT, GLENN          No.  2:19-cv-1009 KJM KJN P
     SUNKETT,

12                Plaintiffs,

13        v.                               NOTICE OF AMENDMENT

14   RALPH DIAZ, et al.,

15                Defendants.

16

17        Plaintiff hereby submits the following document in compliance with the court's order

18   filed_____.

19             _____       Amended Complaint

20   OR

21             _____       Plaintiffs opt to voluntarily dismiss this action and pursue

22                                    their claims in state court.

23   DATED:

24

25                                    _____
                                      Plaintiff
26

27                                    _____
                                      Plaintiff

28

                                         1