UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNEY FLOW-SUNKETT, GLENN SUNKETT,<br><br>  Plaintiffs,<br><br>  v.<br><br>RALPH DIAZ, et al.,<br><br>  Defendants. | No. 2:19-cv-1009 KJM KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

    Plaintiffs, a state prisoner and his wife, both proceeding pro se, filed this civil rights action seeking relief under 42 U.S.C. § 1983, and the wife paid the court's filing fee. Because the nature of plaintiffs' allegations concern prison conditions and seek relief from officers of a government entity, this case was deemed to be a prisoner case, and the matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

    This action proceeds on plaintiffs' second amended complaint. As discussed below, the undersigned finds that plaintiffs state a potentially cognizable due process claim, but their remaining claims should be dismissed without prejudice.

II. Screening Standards

    A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See

28 U.S.C. § 1915A(a).[1]  In its review the court must identify any cognizable claims, and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

---

[1] It is undisputed that plaintiff Glenn Sunkett is a state prisoner, and both plaintiffs challenge the conditions of his confinement at KVSP, where plaintiff Sunkett is housed.  It is unclear whether a court may screen a complaint brought jointly by a nonprisoner and where the nonprisoner paid the court's filing fee.  However, a district court may dismiss a complaint for lack of jurisdiction or failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1), (6).

1 true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the
2 pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236
3 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

The Civil Rights Act

5 To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a
6 right secured by the Constitution or laws of the United States was violated; and (2) that the
7 violation was committed by a person acting under the color of state law. See West v. Atkins, 487
8 U.S. 42, 48 (1988). The statute requires that there be an actual connection or link between the
9 actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See
10 Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A
11 person 'subjects' another to the deprivation of a constitutional right, within the meaning of
12 § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform
13 an act which he is legally required to do that causes the deprivation of which complaint is made."
14 Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

15 Supervisory personnel are generally not liable under § 1983 for the actions of their
16 employees under a theory of respondeat superior and, therefore, when a named defendant holds a
17 supervisorial position, the causal link between him and the claimed constitutional violation must
18 be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.
19 Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the
20 involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of
21 Regents, 673 F.2d 266, 268 (9th Cir. 1982).

22 III. Plaintiffs' Second Amended Complaint[2]

23 The gravamen of plaintiffs' pleading is that plaintiffs are wrongfully denied family visits
24 based on a Mendocino County Jail Disciplinary Report improperly issued against plaintiff
25 Sunkett.[3] (ECF No. 28 at 8.) Plaintiffs argue that the Mendocino County Superior Court

---

[2] Plaintiffs refer to exhibits but no exhibits are appended. Plaintiffs appear to refer to exhibits appended to their original complaint. (ECF No. 1 at 26-185.)

[3] In the July 30, 2009 incident report, the searching officers noted that the middle window pillar

3

1   dismissed the attempted escape charges filed against plaintiff Sunkett, based on Mendocino

2   County Jail maintenance records that demonstrated that the damage done to Sunkett's cell

3   window was done before Sunkett was housed there.[4]  Thus, plaintiffs contend that the allegedly

4   incomplete Mendocino County Jail Disciplinary Report added to plaintiff Sunkett's central file by

5   county jail staff upon his transfer to state prison should not be used to preclude family visits under

6   California Code of Regulations, title 15, Section 3177.[5]

7       Following his transfer to state custody, plaintiff Sunkett was repeatedly informed at

8   various classification hearings that the dismissed escape charge would not impact his ability to

9   have family visits, but that he had to complete the required term of closed custody before he

10  would become eligible for family visits.  (ECF No. 28 at 10.)  Indeed, plaintiffs contend it was

11  not until plaintiff Sunkett was transferred to Kern Valley State Prison ("KVSP") that prison

12  officials affixed an escape administrative determinant to his record that foreclosed his ability to

13  avail himself of family visiting with his wife, plaintiff Flow-Sunkett.  (ECF No. 28 at 11.)

14      Plaintiffs allege violations of their First (free exercise), Fifth (double jeopardy), Eighth

15  (deliberate indifference and cruel and unusual punishment) and Fourteenth (due process and equal

16  protection) Amendment rights, as well as myriad violations of state law and regulations, and the

17  California Constitution.  (ECF No. 28 at 3-4, 19-26.)

18      Plaintiffs name the following individuals as defendants:  Ralph Diaz, Secretary of the

19  California Department of Corrections and Rehabilitation ("CDCR"); M. Voong, chief of the

---

was cut about 1/8th of an inch deep.  (ECF No. 1 at 46.)  Such officers also found a small piece of metal, bearing fine metallic debris, wrapped in toilet paper, which was hidden in a sweatshirt, as well as excessive food, clothing, books and magazines.  (ECF No. 1 at 46.)  The shift supervisor was called over to plaintiff's cell, and noted that the base of the single bar contained "a deep cut that was very shiny and no longer had paint on that area."  (ECF No. 1 at 45.)

[4] Plaintiffs note that on March 22, 2018, the Mendocino County Superior Court ordered the destruction of all records related to this case.  (ECF No. 28 at 8, citing Ex. C (ECF No. 1 at 48.)

[5] Plaintiffs claim that plaintiff Sunkett was found guilty in the 2009 jail disciplinary, but it is unclear whether he challenged the 2009 disciplinary in state or federal court, and plaintiffs do not allege that the 2009 jail disciplinary was set aside or overturned by a state or federal court.  In any event, none of the named defendants were involved in the imposition or hearing of the 2009 jail disciplinary.

CDCR Office of Appeals; T. Lee, appeals examiner of the CDCR Office of Appeals; Christian Pfeiffer, warden of KVSP; correctional officers D. Stebbins, J. Castro, S. Crammer, C. Gonzalez, T. Redmon, J. Allen, Hammer, and Alcatar; Scott Kernan, Secretary of the CDCR; and Larry Cupler, Ombudsman.

Plaintiffs seek money damages, injunctive relief, and the appointment of counsel.

IV. Discussion

    A. Potentially Cognizable Due Process Claim

Plaintiffs raise procedural due process claims in connection with subsequent classification procedures that took place after plaintiff Sunkett was transferred to CDCR custody. The undersigned finds that plaintiff states a potentially cognizable due process claim based on the failure to provide plaintiff Sunkett notice or an opportunity to be heard at the December 4, 2015 hearing.

Plaintiff Sunkett is entitled to basic procedural due process protection, which requires notice and the opportunity to be heard "at a meaningful time and in a meaningful manner" prior to deprivation of an established interest. Logan v. Zimmerman Brush Co., 455 U.S. 422, 437 (1982); see also Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994) (prisoner only entitled to notice and an opportunity to be heard).

On October 27, 2010, the San Quentin ICC committee noted that Mr. "Sunkett no longer poses a threat to the safety and security of the institution." (ECF No. 28 at 8-9.) Plaintiffs contend that plaintiff Sunkett was informed on multiple occasions at classification hearings that the dismissed escape charge would not impact his ability to have family visits, but that he had to complete the required term of closed custody before he would become eligible for family visits. (ECF No. 28 at 10.)

In 2011, plaintiff was endorsed for transfer to Calipatria State Prison. Plaintiff was transferred to KVSP in 2014, and at the initial review hearing on March 7, 2014, the ICC panel noted plaintiff Sunkett's alleged escape history, stating "Case work follow will be completed upon next available UCC for Escape review." (ECF No. 28 at 10.) Plaintiffs point out that this was the first time an "Escape Review" was ever mentioned despite nine prior ICC, disciplinary,

5

1 or endorsement hearings over 3.5 years.

2 However, on December 4, 2015, defendant T. Redmon held plaintiff Sunkett's third annual ICC hearing at KVSP outside of plaintiff Sunkett's presence. (ECF No. 28 at 11.) For the first time, Redmon conducted an escape review, and "determined that plaintiff Sunkett was an immediate escape risk and referred plaintiff to CSR for recommendation to affix an escape administrative determinant." (ECF No. 28 at 11.) Plaintiffs contend that plaintiff Sunkett "was not notified of any changes made to his program, nor of T. Redmond's CSR recommendation." (Id.) On March 3, 2016, defendant CSR T. Boerum approved defendant Redmon's request and affixed the escape administrative determinate to plaintiff Sunkett's Central File, adding 19 points to Sunkett's placement score. Plaintiffs contend that such action was taken without notice or an opportunity to be heard. Despite two subsequent annual hearings in 2016 and 2017, plaintiff Sunkett was not informed of such CSR action. It was not until November 28, 2017, that defendant Allen informed plaintiff Sunkett about the administrative determinant, and why Allen was allowed to deny plaintiff's request for family visiting based on any escape or attempted escape allegation without a conviction.

Accordingly, the undersigned finds that plaintiff Sunkett states potentially cognizable due process claims as to defendants Redmon and Boerum in connection with the December 4, 2015 hearing and subsequent application of the administrative determinant and increased placement score without notice and an opportunity to be heard.

B. Remaining Federal Claims

For the following reasons, the undersigned finds that plaintiffs fail to state cognizable federal civil rights claims against the remaining defendants.

False Charges

Any defendant's reliance on an invalid jail incident report or jail disciplinary to deny plaintiffs family visits under California Code of Regulations, title 15, Section 3177[6] does not,

---

[6] Inmate applications for family visits are evaluated under 15 C.C.R. § 3177. Accord, CDCR Department Operations Manual ("DOM") § 54020.33.1. Title 15 C.C.R. § 3177 provides in pertinent part:

without more, state a cognizable civil rights claim.  Prisoners are not protected from false charges or official reliance on such charges.  See Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be free from wrongfully issued disciplinary reports), aff'd without opinion, 168 F.3d 498 (9th Cir. 1999).  Prisoners do not have a right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under § 1983.  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state constitutional claims."); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process

---

> (b) Family visiting is a privilege.  Eligibility for family visiting shall be limited by the assignment of the inmate to a qualifying work/training incentive group as outlined in section 3044.
>
> (1) Family visits shall not be permitted for inmates convicted of a violent offense involving a minor or family member or any sex offense, which includes but is not limited to the following Penal Code sections: 187 (when the victim is a family member as defined in Section 3000 or minor); 192 (when the victim is a family member or minor); 243.4; 261; 261.5, 262; 264.1; 266c; 266j; 273a; 273d; 273.5; 273.6; 285; 286; 288; 288a; 288.2; 288.5; 289; 289.5; 311.1; 311.2; 311.3; 311.4; 313.1; 314; or 647.6.
>
> (A) Inmates may be prohibited from family visiting where substantial documented evidence or information of the misconduct described in section 3177(b)(1) exists, without a criminal conviction. The evidence or information appropriate for the purpose of this regulation shall include rule violation reports as well as the standard described in section 3173.1.
>
> . . .
>
> (D) Family visiting shall be restricted as necessary to maintain order, the safety of persons, the security of the institution/facility, and required prison activities and operations, pursuant to section 3170.

15 C.C.R. § 3177.

protections . . . are provided.").

Moreover, the Supreme Court has emphasized that state prison restrictions and decisions concerning prisoner visitations are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Pell v. Procunier, 417 U.S. 817, 827 (1974). See also Block v. Rutherford, 468 U.S. 576, 586, 589 (1984) ("[T]he Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility."); Overton v. Bazzetta, 539 U.S. 126, 129-32 (2003) (despite how severely the prison regulations at issue restricted the prisoners' right to receive visits from family, they were still constitutional "because the challenged regulations bear a rational relation to legitimate penological interests.")

### Family Visits

"It is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits." Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) (*en banc*) (citing, inter alia, Kentucky v. Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (the Due Process Clause does not guarantee a right of unfettered visitation).) In Gerber, the Ninth Circuit held that "while the basic right to marry survives imprisonment, . . ., most of the attributes of marriage -- cohabitation, physical intimacy, and bearing and raising children -- do not." Gerber, 291 F.3d at 621; cf. Overton, 539 U.S. at 131-32 (declining to decide whether the right to intimate association survives incarceration because the "challenged regulations bear a rational relation to legitimate penological interests."). Spouses and family members of prisoners do not have rights or privileges to visitation distinct from those of the inmate to which they are married or related. Hill v. Washington State Dep't of Corrections, 628 F.Supp.2d 1250, 1263 (W.D. Wash. 2009); Harris v. Murray, 761 F.Supp. 409, 412 (E.D. Va. 1990). Thus, plaintiffs' contention that they have a constitutional right to family visits is unavailing because the benefits

////

////

of marriage do not survive incarceration.[7] "The fact that California prison officials may choose to permit some inmates the privilege of conjugal visits is simply irrelevant to whether there is a constitutional right to conjugal visits . . . while in prison." Gerber, 291 F.3d at 621-22 (emphasis added) (§ 3177(b) states "[f]amily visiting is a privilege.").

Free Exercise

The operative pleading fails to state a claim for interference with plaintiffs' religious practices. The Free Exercise Clause of the First Amendment provides, "Congress shall make no law . . . prohibiting the free exercise" of religion U.S. Const., Amend. I. Any assertion that § 3177 runs afoul of that clause is defeated by the U.S. Supreme Court's decision in Employment Division v. Smith, 494 U.S. 872 (1990). There, the Court held that generally-applicable laws that incidentally burden a religious practice do not violate the Free Exercise Clause. Smith, 494 U.S. at 878; Cutter v. Wilkinson, 544 U.S. 709, 714 (2005). Because section 3177 does not prohibit conjugal visitation on the basis of religion, but rather based on crimes and other penological security concerns, it does not violate the Free Exercise Clause. Turner v. Safley, 482 U.S. 78, 95 (1987) (holding that a prison inmate retains those constitutional rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system); Noguera v. Rowland, 1991 WL 148766 (9th Cir. July 29, 1991) (holding that a condemned inmate's claim to a right to conjugal visits under the Free Exercise Clause failed because the inmate could not "show that the prison regulation prohibiting conjugal visits for condemned inmates is not rationally related to a valid penological interest.")

Due Process

To the extent plaintiffs attempt to raise procedural due process challenges in connection with the July 30, 2009 incident report, or the 2010 hearing at San Quentin, such challenges appear

---

[7] Plaintiff Sunkett retains the First Amendment right to free exercise of his religious faith, but that right "is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corrections and Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). To state a cognizable claim under the Free Exercise clause of the First Amendment, plaintiff Sunkett must allege facts which show that the challenged regulation is not valid or neutral with respect to religion.

to be time-barred. The statute of limitations for a § 1983 claim filed in California is two years, and it may be tolled for up to two years for the disability of imprisonment for certain plaintiffs. See Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code §§ 335.1, 352.1, 357. Plaintiffs filed the instant action on June 3, 2019, over nine years after the Mendocino County Jail incident report issued.

Aside from the December 4, 2015 hearing at KVSP, plaintiffs identify no other classification hearing or other hearing in which plaintiff alleges he was denied notice or an opportunity to be heard.

Plaintiffs name defendants Voong and Lee, who worked in the CDCR Office of Appeals, and plead that such defendants denied plaintiff Sunkett's third level appeal. (ECF No. 28 at 14.) However, prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988)). Even the lack of, or the failure of prison officials to properly implement, an administrative appeals process within the prison does not raise constitutional concerns. Mann, 855 F.2d at 640.

### Equal Protection

Plaintiffs fail to state an equal protection claim. To prevail on an equal protection claim, plaintiffs must show that prison officials intentionally acted in a discriminatory manner. FDIC v. Henderson, 940 F.2d 455, 4711 (9th Cir. 1991). Here, plaintiffs allege that they are denied family visiting due to the false escape charge lodged against plaintiff while housed in the Mendocino County Jail. Such facts fail to establish an equal protection violation.

### Double Jeopardy

Plaintiffs allege that the CDCR and KVSP are "imposing a scheme of double jeopardy," purportedly in violation of the Fifth Amendment. (ECF No. 28 at 17.) The Double Jeopardy Clause precludes "a second prosecution for the same offense," and prevents "the State from 'punishing twice, or attempting a second time to punish criminally, for the same offense.'" Kansas v. Hendricks, 521 U.S. 346, 369 (1997) (quoting Witte v. United States, 515 U.S. 389, 396 (1995)). Plaintiffs' double jeopardy claim is unclear, but does not appear to apply. See

Breed v. Jones, 421 U.S. 519, 528 (1975) (holding that the Double Jeopardy Clause applies only to criminal proceedings). Plaintiffs concede that the subsequent criminal charges for escape were dismissed. Moreover, double jeopardy does not normally apply to prison or jail disciplinary proceedings. U.S. v. Bloom, 165 F. App'x 565, 567 (9th Cir. 2006) (holding that loss of good time and prison discipline for escape did not bar subsequent criminal prosecution for escape); Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (prison disciplinary proceedings are not part of criminal prosecution). The Ninth Circuit has held that prison sanctions are not "punishment" as the term is used in double jeopardy because the sanctions are solely remedial. U.S. v. Brown, 59 F.3d 102, 104-105 (9th Cir. 1995). The instant case does not involve two criminal trials or two criminal punishments, and therefore double jeopardy does not apply.

Deliberate Indifference

Finally, plaintiffs raise a "deliberate indifference" claim, ostensibly under the Eighth Amendment, based on their allegations that defendants "compelled" plaintiffs to undertake hunger strikes. However, such allegations are unavailing because hunger strikes were self-imposed, and not conditions that were caused by defendants.

For all of the above reasons, plaintiffs fail to state cognizable federal civil rights claims as to the remaining federal claims.

C. Potential State Law Claims

Plaintiffs allege violations of prison regulations, state law, and the California Constitution,[8] and set forth six separate causes of action based thereon. (ECF No. 28 at 23-25.)

> Supplemental jurisdiction is constitutional so long as the pendent state law claim is part of the same "case or controversy" as the federal claim. See Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1174 (9th Cir.2002); 28 U.S.C. § 1367(a) (providing "the district courts shall have supplemental jurisdiction over all other claims that are so related to [federal claims] that they form part of the same case or controversy under Article III"). Nonfederal claims are part of the same "case" as federal claims when they "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."

---

[8] Plaintiffs filed a claim with the State of California Government Claims Board. (ECF No. 28 at 17; see also ECF No. 1 at 184-85.)

11

Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc., 333 F.3d 923, 925 (9th Cir. 2003), quoting Finley v. United States, 490 U.S. 545, 549 (1989) (internal quotes and citation omitted).  This court has discretion under 28 U.S.C. § 1367(c) whether or not to exercise jurisdiction over state law claims.  See Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (*en banc*) (noting that "a federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)").

Here, plaintiffs' state law claims are solely based on, and related to, their claims concerning the denial of family visiting, rather than the alleged deprivation of due process at the December 4, 2015 hearing at KVSP.  While the decision rendered at such hearing impacted plaintiffs' family visiting claims, the sole inquiry remaining in this court is whether plaintiff received notice and an opportunity be heard.  Thus, plaintiffs' state law family visiting claims substantially predominate over the sole remaining federal due process claim, and do not replicate the discrete federal due process claim that remains viable here.  Therefore, the undersigned recommends that the district court decline to exercise jurisdiction.  28 U.S.C. § 1367(c)(2).

V. Leave to Amend

Plaintiffs have twice amended their pleadings.  The undersigned has considered whether plaintiffs should be granted another opportunity to amend in an attempt to pursue federal claims based on the alleged denial of family visiting.  "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility."  California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (while leave to amend shall be freely given, "futile amendments should not be permitted.").  Because the identified deficiencies cannot be cured in this context, and plaintiffs were provided opportunities to amend the original complaint, the undersigned finds it would be futile to grant plaintiffs leave to amend to allege additional federal claims.

Nevertheless, plaintiff Sunkett should be allowed to amend to pursue his due process claim based on the deprivation of his right to notice and an opportunity to be heard as to

12

defendants Redmon and Boerum.  Because plaintiff Flow-Sunkett does not have standing to challenge the alleged due process violation, she should also be dismissed from this action.

VI. Request for Counsel

Plaintiffs request that the court appoint counsel for one or both of them.  District courts lack authority to require counsel to represent indigent prisoners in section 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court may request an attorney to voluntarily represent such a plaintiff.  See 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the court must consider the plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved.  Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel).  The burden of demonstrating exceptional circumstances is on the plaintiff.  Id.  Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel.

Having considered the factors under Palmer, the court finds that plaintiffs have failed to meet their burden of demonstrating exceptional circumstances warranting the appointment of counsel at this time.

VII. Conclusion

Accordingly, IT IS HEREBY ORDERED that plaintiffs' motion for the appointment of counsel (ECF No. 28) is denied without prejudice.

Further, IT IS HEREBY RECOMMENDED that:

1. Plaintiff Sunkett be granted thirty days in which to file a third amended complaint solely as to his due process claims against defendants Redmon and Boerum.

2. Plaintiffs' remaining claims against the remaining defendants be dismissed without prejudice.

3. Plaintiff Flow-Sunkett be dismissed from this action.

      4. The court decline to exercise jurisdiction over plaintiffs' state law claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one** days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiffs are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 18, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/sunk0816.56