UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN S. SUNKETT,<br><br>             Plaintiff,<br><br>    v.<br><br>T. BOERUM and T. REDMON,<br><br>             Defendants. | Case No. 1:21-cv-01137-HBK (PC)<br><br>ORDER GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE<br><br>(Doc. No. 55-2)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE[1]<br><br>(Doc. No. 55) |

Pending before the Court is Defendants T. Boerum and T. Redmon's Motion to Dismiss filed on June 18, 2024. (Doc. No. 55, "Motion"). Included within Defendant's Motion is a Request for Judicial Notice. (Doc. No. 55-2). Plaintiff timely filed an Opposition (Doc. No. 56), and Defendants filed a Reply (Doc. No. 57). For reasons set forth below, the Court grants both the Request for Judicial Notice and the Motion to Dismiss.

**BACKGROUND**

Plaintiff, a prisoner, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1). Plaintiff is proceeding on his Third Amended Complaint ("TAC"), as screened, which alleges Fourteenth Amendment due process claims against Defendants Boerum and Redmon for affixing an escape risk determinant to Plaintiff's central file and adding

---

[1] Both parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1). (Doc. No. 61).

1

1  19 points to his classification score without first providing notice to Plaintiff.  (Doc. Nos. 38, 39,
2  40).  Plaintiff's resultant classification made him ineligible for certain privileges, including
3  education programs, work opportunities, and family visits.  (Doc. No. 38 at 7-8 ¶ 49).  Plaintiff
4  alleges that the affixing of the escape risk determinant was based on incomplete and erroneous
5  information.  Specifically, a 2009 disciplinary report from the Mendocino County Jail found
6  Plaintiff guilty of attempted escape, but the findings were cast into doubt by exculpatory evidence
7  that emerged in a related criminal prosecution that was ultimately dismissed in the interest of
8  justice by the Mendocino County Superior Court upon a motion by the District Attorney's Office.
9  (*Id*. at 3-4 ¶¶ 14-22).

10  Plaintiff states he only learned of the escape determinant roughly 20 months after it was
11  affixed.  Specifically, on October 19, 2017, Plaintiff had his annual Institutional Classification
12  Committee ("ICC") hearing.  (*Id*. at 13 ¶ 46).  Following changes to CDCR policy, Plaintiff met
13  the newly lowered threshold for reclassification to Medium A Custody, which normally would
14  have made him eligible for family visits and other programs and work opportunities.  (*Id*. at 13 ¶
15  46).  At the hearing, Plaintiff was provided an application for family visitation, which he
16  completed.  (*Id*. ¶ 47).  Plaintiff's application was provisionally approved, but ultimately rejected
17  upon the discovery that Plaintiff's C-file had the escape risk determinant that was affixed nearly
18  two years earlier.  (*Id*. ¶¶ 48-49).

19  When Plaintiff filed a grievance challenging the affixing of the escape risk determinant
20  without his knowledge or an opportunity to be heard, the grievance was addressed at the first
21  level by Defendant T. Redmon, who was the individual who had initially recommended the
22  escape risk determinant be affixed.  (*Id*. ¶ 52).  Redmon denied the request to remove the escape
23  risk determinant, but partially granted the grievance in permitting Plaintiff an opportunity to be
24  heard by an ICC panel.  (*Id*.).  The panel was comprised of T. Redmon, S. Cranmer, and J. Castro,
25  whom Plaintiff asserts "all . . . previously had direct participation in either Sunkett's family-
26  visiting denial, the 602-appeal process and/or the affixing of the administrative determinant," and
27  thus Plaintiff contends they could not be fair and impartial in reviewing the decisions Plaintiff
28  sought to challenge. (*Id*. ¶ 53).  The panel upheld the affixing of the escape risk determinant

1  based on Plaintiff's escape history, citing to CDCR Department Operations Manual Section

2  54020 and Title 15 of the California Code Regulations Section 3177(b)(1).  (*Id*. ¶ 54).  After

3  exhausting his administrative remedies, Plaintiff ultimately filed the instant federal lawsuit.  (*Id*.

4  ¶¶ 55-58); (Doc. No. 1).

5       Defendant's pending Motion seeks dismissal of Plaintiff's TAC under Rule 12(b)(6) on

6  two grounds: (1) Plaintiff's TAC fails to allege a due process claim under the Fourteenth

7  Amendment; and (2) Defendants are entitled to qualified immunity because during the applicable

8  time, there was no clearly established right to be afforded due process protections when affixing

9  an escape risk determinant to an inmate's central file.  (*See generally* Doc. No. 55-1 at 4-11).

10       In his brief Opposition, Plaintiff argues that by not disputing the facts asserted in his TAC,

11  Defendants effectively concede that they violated Plaintiff's constitutional rights.  (Doc. No. 56 at

12  2).  In their Reply, Defendants assert that even assuming the truth of Plaintiff's allegations, as the

13  Court must in reviewing a Rule 12(b)(6) motion, Plaintiff's TAC fails to state a claim because

14  Plaintiff has no liberty interest in a particular classification status or score, family visits,

15  programming, or work assignments.  (Doc. No. 57 at 2).

16 **REQUEST FOR JUDICIAL NOTICE**

17       Attached to Defendants' Motion is a Request for Judicial Notice.  (Doc. No. 55-2).

18  Although the motion to dismiss stage typically does not involve considering matters outside the

19  pleadings, the court may consider items that are properly judicially noticed.  *Rosal v. First Fed.*

20  *Bank of Cal.*, 671 F. Supp. 2d 1111, 1120 (N.D. Cal. 2009).  Defendants request the Court take

21  judicial notice of six prison regulations, including two provisions of Title 15 of the California

22  Code of Regulations and four provisions of CDCR's Department Operations Manual ("DOM"),

23  which were in effect at the time of the events giving rise to Plaintiff's claims:

24     1. California Code of Regulations, title 15, section 3177 (2015), Family Visiting

25        (Overnight).

26     2. California Code of Regulations, title 15, section 3375.2 (2015), Administrative

27        Determinants.

28     3. CDCR 2015 DOM, section 54020.33, Family Visiting General Information.

   4. CDCR 2015 DOM, section 54020.33.1, Inmate Family Visiting Eligibility.

   5. CDCR DOM, section 54020.33.2, Inmate Applications for Family Visits.

   6. CDCR DOM, section 61010.11.5, Placement.

Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The Court may take judicial notice of a pertinent law or regulations at any stage of the proceedings.  *Id.*; *see also National Agricultural Chemicals Assn. v. Rominger*, 500 F. Supp. 465, 472 (E.D. Cal. 1980).  Courts may take judicial notice of state regulations, including prison rules and regulations.  *See Harrison v. Kernan*, 971 F.3d 1069, 1071 n.2 (9th Cir. 2020) (taking judicial notice of relevant Title 15 provisions and regulatory history); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1153 n.3 (9th Cir. 2017) ("The Court may take judicial notice of . . . regulations not included in the plaintiff's complaint."); *Mangiaracina v. Penzone*, 849 F.3d 1191, 1193 n.1 (9th Cir. 2017) (taking judicial notice of jail's rules and regulations for inmates).  The Court may take judicial notice on its own or at the request of any party, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

  Here, Defendants ask the Court to take judicial notice of provisions from Title 15 and the DOM that were in effect in 2015 and have direct relevance to Plaintiff's due process claims.  The provisions concern eligibility for family visits, applications for family visits, the process for affixing administrative determinants including the escape risk determinant applied to Plaintiff's file, and the impact of escape risk determinants on an inmate's eligibility for various prison programs.  (*See generally* Doc. No. 55-2 at 4-21).  The existence and content of these regulatory provisions is not subject to reasonable dispute, nor does Plaintiff challenge Defendants' Request. (*See* Doc. No. 56).  And because Defendants have provided the necessary information to establish the propriety of judicial notice, the Court must grant the request under Federal Rule of Evidence 201(c).

////

4

**APPLICABLE LAW**

**A. Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Dismissal for failure to state a claim is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, the complaint must have sufficient facts to state a facially plausible claim to relief). In deciding a motion under Rule 12(b)(6), the court accepts as true all well-pled factual allegations in the complaint and determines whether the factual allegations are sufficient to state a right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011) (court accepts as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Courts are instructed to apply Rule 15 with extreme liberality. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted); *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019). Only where leave to amend would be futile, because "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," should leave to amend be denied. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B. Fourteenth Amendment Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*,

219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).  As such, the procedural guarantees of due process apply only when a constitutionally protected interest is at stake.  *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th Cir. 1995).

Incarcerated persons are protected from deprivation of a liberty interest without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Protected liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted).  However, state law establishes a liberty interest only where denial of the interest "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Keenan v. Hall*, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Because there is no single standard for determining whether a prison hardship is atypical and significant, the "condition or combination of conditions or factors . . . requires case by case, fact by fact consideration."  *Keenan*, 83 F.3d at 1089; *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013).  The *Sandin* Court identified three key factors for courts to consider: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody[,]" and thus comported with the prison's discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will inevitably affect the duration of the prisoner's sentence. *Sandin*, 515 U.S. at 486–87; *see also Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003), *cert denied*, 543 U.S. 825 (2004).

**DISCUSSION**

**A. Fourteenth Amendment Due Process**

Here, Plaintiff alleges a due process violation based on Defendants conducting closed door reviews of his escape history[2] and affixing an escape risk determinant that made Plaintiff

---

[2] According to the TAC, Redmon conducted an annual review on December 4, 2015 without any other staff involved, in which he recommended an escape risk determinant be affixed to Plaintiff's central file based on the incident at Mendocino County Jail, and on March 3, 2016, Defendant Boerum approved Redmon's recommendation in another "closed door" review.  (Doc. No. 38 at 6-7 ¶¶ 41-43).

ineligible for various privileges, including family visits, educational programs, and work opportunities.  (*See generally* Doc. No. 38).  Plaintiff was never given notice of the reviews, much less an opportunity to be heard until the classification change had already been made, and he only learned of the change nearly two years later.  (*Id*. at 7-8 ¶ 49).  Liberally construing the TAC, Plaintiff also contends that the lack of a fair and impartial grievance review and subsequent ICC panel hearing constituted a further due process violation.  (*Id*. at 14 ¶¶ 52-54).

Defendants do not dispute that they provided no notice or other due process to Plaintiff in determining his classification status based on the escape determinant.  (*See generally* Doc. No. 55).  Thus, the central issue before the Court is a question of law: whether the interests implicated in Defendants' administrative actions qualified as affecting Plaintiff's liberty interests under *Sandin* or under state law to  warrant due process protections.

While the Court found at the screening stage that Plaintiff's claims were sufficient to survive *sua sponte* screening,[3] upon fuller review, the Court concludes that neither state law nor the Due Process Clause confers a liberty interest on Plaintiff in a particular classification status or in family visitation privileges.

1. Plaintiff Has No Liberty Interest in a Classification or Security Status

It is well settled that prisoners have no constitutional right to a particular classification status, even if the classification status results in a loss of privileges.  *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (expressly rejecting claim that prisoner classification and rehabilitative programs invoked due process protections); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (agreeing that inmate had no constitutional right to particular classification status and further finding no independent right under state law).  *See also Neal v. Shimoda*, 131 F. 3d 818, 828 (9th Cir. 1997).  Thus, the determination or any change in Plaintiff's classification status from "no threat to the security of the institution" to "threatening," and the addition of 19 points to

---

[3] The fact that the Court found Plaintiff's claims plausible at the screening stage does not foreclose the possibility of granting a motion to dismiss.  *See Forte v. Hughes*, 2014 WL 5603788, *1 (E.D. Cal. Nov. 3, 2014) (noting a screening order does not rule on the merits of the proposed action but instead evaluates whether the claim is cognizable and is not a substitute for a 12(b)(6) motion; *see also Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. March 28, 2007) ("a defendant's right to bring a motion to dismiss is not foreclosed by the issuance of a sua sponte screening providing that the prisoner has stated a claim").

1  his classification score, did not by themselves invoke a liberty interest sufficient to trigger due

2  process protections.  (*See* Doc. No. 38 at 12 ¶ 42); *see Moody*, 429 U.S. at 88 n. 9.  Thus, Plaintiff

3  was not entitled to due process protections before Defendants determined Plaintiff's classification

4  status.  *See Sandin*, 515 U.S. at 484.

5  An inmate may state a cognizable due process claim if classification changes were made

6  for unconstitutional reasons, for example if they were done in retaliation for plaintiff's exercise of

7  his First Amendment rights, or done for religious, political, or racially discriminatory reasons.

8  Here, however, there are no facts to suggest that Plaintiff's escape risk determinant was affixed

9  for any improper reason.  Plaintiff acknowledges that Defendants did not initiate the escape

10 review on their own but did so pursuant to the ICC's statement at Plaintiff's March 7, 2014

11 classification hearing that such a review would be conducted in the future.  (*See* Doc. No. 38 at 11

12 ¶¶ 33-34).  The TAC alleges no facts to suggest Defendants' actions was driven by a retaliatory

13 motive or animus of any kind.  Indeed, Plaintiff admits that despite the dismissal of the felony

14 case, the exculpatory information uncovered during Plaintiff's prosecution was never added to his

15 county disciplinary report, and the report remains part of his central state file. (*Id*. at 9-10 ¶ 21).

16 On March 22, 2018, the Mendocino County Superior Court ordered the destruction of all records

17 related to Plaintiff's case, including the original county jail disciplinary report. (*Id*. at 10 ¶ 22).

18 Thus, because Plaintiff has no liberty interest in his particular classification status, he was

19 not entitled to any due process protections on that basis.  Nor does Plaintiff allege any facts to

20 suggest that the change to his classification status were driven by improper motives that would

21 give rise to a First Amendment or Fourteenth Amendment Equal Protection claim.

22  2. Plaintiff Has No Liberty Interest in Family Visitation

23 Likewise, "it is well-settled that prisoners have no constitutional right while incarcerated

24 to contact visits or conjugal visits." *Gerber v. Hickman*, 291 F.3d 617, 622 (9th Cir. 2002), *cert.*

25 *denied*, 537 U.S. 1039 (2002).  And "the fact that California prison officials may choose to permit

26 some inmates the privilege of conjugal visits is simply irrelevant to whether there is a

27 constitutional right to conjugal visits . . ." (*Id*. at 621-22).  Instead, "an inmate's inability to visit

28 with whom he wishes is an 'ordinary incident of prison life'" and thus does not impose an

atypical and significant hardship. *Macedon v. California Dep't of Corr.*, 67 F. App'x 407, 408 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 485). Nor does an examination of the remaining *Sandin* factors yield a different result.

While the indefinite duration of Plaintiff's security restrictions, including permanent exclusion from family visitation, is a factor to be considered under *Sandin*, the "degree of restriction" at issue falls short of the kind of severe restraint on liberty that the Supreme Court has found sufficient to invoke due process protections. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005) (finding that placement in a supermax prison involved an atypical and significant hardship because it mirrored the restrictions of administrative segregation <u>and</u> was of indefinite duration); *see also Sandin*, 515 U.S. at 486 (finding that 30 days in disciplinary segregation did not constitute atypical and significant hardship); *but see Aref v. Lynch,* 833 F.3d 242, 258 (D.C. Cir. 2016) (finding inmates had liberty interest in not being transferred to restrictive federal facility because placement there could be permanent and thus an inmate "may spend years denied contact with their loved ones and with diminished ability to communicate with them."). Therefore, because restricted access to contact visits is an ordinary incident of prison life, the fact that Plaintiff may be permanently ineligible for them does not by itself establish an atypical and significant hardship.

Finally, there is no evidence in the record to suggest that the imposition of an escape risk determinant will "inevitably affect the duration" of Plaintiff's prison sentence. *See Sandin*, 515 U.S. at 487. Plaintiff does not contend that his consideration for parole will be affected by the determinant, and a mere speculative contention that Plaintiff will face greater difficulty obtaining parole is insufficient to trigger the due process protections of *Wolff*. *See Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003); *Sandin*, 515 U.S. at 487 (finding no due process protections triggered where plaintiff failed to show disciplinary conviction "will inevitably affect the duration of his sentence") (emphasis added); *see also Bennett v. Curry*, 386 F. App'x 645, 646 (9th Cir. 2010) (dismissing due process claim where plaintiff found "unsuitable for parole for several independently adequate reasons and not only because of the disciplinary record he seeks to challenge. Because his disciplinary record did not 'alter the balance' in his parole suitability

determination, its effect if any on the duration of his sentence 'is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.'") citing *Sandin*, 515 U.S. at 487.  While it is *possible* that Plaintiff's classification change may affect his future suitability for parole, there are no facts to indicate it "will inevitably affect the duration of his sentence" and thus this factor weighs against finding that the classification change imposed an atypical and significant hardship relative to the incidents of prisoner life.  *See Guzman v. Valdez,* 2024 WL 2817509, at *4 (E.D. Cal. June 3, 2024).

On balance, the Court finds that the three *Sandin* factors weigh against finding that Defendants' affixing of an escape risk determinant on Plaintiff's central file imposed an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life, and thus did not trigger the protections of the due process clause.

For the same reason, the Court finds that Plaintiff's vague complaints that he was denied unspecified jobs or programming opportunities due to his classification status fails to allege an "atypical and significant hardship" that would rise to a liberty interest.  *Sandin*, 515 U.S. at 484; *Moody*, 429 U.S. at 88 n. 9.  *See also Walker v. Gomez,* 370 F.3d 969, 973 (9th Cir.2004) (no liberty interest in employment or prison job).

   3. <u>State Law Does Not Confer a Liberty Interest in Family Visitation</u>

Furthermore, the applicable state prison regulations establish a liberty interest in family visitation or other programs.  Both Title 15 and the DOM refer to family visits as a "privilege." *See* 2015 Cal. Code Regs. tit. 15 § 3177 (Doc. No. 55-2 at 5) (noting that family visits "shall be restricted as necessary to maintain order, the safety of persons, the security of the institution/facility, and required prison activities and operations . . ."); *see also* DOM 54020.33 (Doc. No. 55-2 at 16).  Likewise, the regulations governing applications for family visits make clear that eligibility is contingent on a review of factors including escape history, commitment offense, behavior history, and current case factors.  DOM 54020.33.2 (Doc. No. 55-2 at 18).  As noted above, the mere fact that a prison official may confer the privilege of family visitation on certain inmates does not create a liberty interest in that privilege.  *See Gerber*, 291 F.3d at 621-22; *see also Davis v. Holbrook*, 2024 WL 3993878, at *4 (C.D. Cal. June 24, 2024) (collecting

cases); *Cooper v. Garcia*, 55 F. Supp. 2d 1090, 1098 (S.D. Cal. 1999).

In sum, neither the Due Process Clause nor state law establishes a liberty interest in Plaintiff's access to family visitation, therefore Plaintiff was not entitled to due process protections when Defendants conducted an escape review that ultimately resulted in Plaintiff becoming ineligible for the family visitation program.

To the extent Plaintiff asserts a due process violation based on how his grievance was processed, including the re-hearing he was granted regarding the escape risk determinant, this likewise fails to allege a cognizable due process claim. This is because inmates lack a constitutional right to a specific grievance procedure and there are no constitutional requirements regarding how a grievance system is operated, even if plaintiff believes the process to be unfair or not accurate. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Whether the re-hearing is construed as part of the grievance process or as a classification hearing, for the reasons discussed above, neither procedure invokes a liberty interest or a constitutional right that would entitle Plaintiff to any due process. *See Moody*, 429 U.S. at 88 n. 9 (no liberty interest in classification status); *see Ramirez*, 334 F.3d at 861 (no constitutional right to a particular grievance process). The mere fact that some of the same prison officials who were involved in the initial affixing of an escape risk determinant or denial of Plaintiff's family visit application were also involved in reviewing Plaintiff's grievance does not by itself constitute a due process violation because Plaintiff has no constitutional right to a particular grievance process, even if Plaintiff believes the process to be unfair. *Id.*

**B. Qualified Immunity**

A government official is entitled to qualified immunity under Section 1983 unless (1) the official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). To demonstrate that a right was "clearly established" requires a showing that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *Wesby*, 583 U.S. at 63; *Vos v. City of*

11

*Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).

This standard is "demanding" and protects "all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 583 U.S. at 63 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "[A] court typically should identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the constitutional right at issue." *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)). "Even when no case is 'directly on point,' courts may compare relevant factors to determine whether every reasonable officer should have known the conduct in question was unlawful." *Anderson v. Virga*, 2018 WL 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017). The plaintiff bears the burden of establishing that the right alleged was clearly established. *Moran v. Washington*, 47 F.3d 839, 844 (9th Cir. 1998).

Here, Defendants argue that even if they violated Plaintiff's due process rights by affixing the escape determination to Plaintiff's central file, dismissal of Plaintiff's TAC is warranted because during the relevant time, it was not clearly established that an inmate was entitled to due process before prison officials could affix an escape risk determinant to the inmate's central file. Plaintiff does not address this argument in his briefing on the Motion to Dismiss. For reasons set forth below, the Court agrees with Defendants that they are entitled to qualified immunity.

A government official is entitled to qualified immunity under Section 1983 unless (1) the official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). To demonstrate that a right was "clearly established" requires a showing that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *Wesby*, 583 U.S. at 63; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).

In his Opposition to the Motion to Dismiss, Plaintiff does not address Defendants' qualified immunity argument, much less "point to any precedent from the Supreme Court, [the Ninth Circuit], or 'a robust consensus of cases of persuasive authority'" showing that his

12

entitlement to due process in the escape review process was "clearly established" at the relevant time period. *See Carley v. Aranas*, 103 F.4th 653, 661 (9th Cir. 2024). Thus, Plaintiff has failed to meet his burden of disputing Defendants' entitlement to qualified immunity. *See Moran*, 47 F.3d at 844. Nor does the Court's own search reveal any indication that such a right was clearly established at the time that would have alerted Defendants that any reasonable official in his shoes would have understood that he was violating Plaintiff's due process right by affixing the escape determinate on Plaintiff's C-File. Defendants could have believed, mistakenly, but reasonably, that the escape charge from the county jail was proper. Accordingly, the Court finds that Defendants are entitled to dismissal on the additional grounds of qualified immunity.

### C. Whether Leave to Amend Should be Granted

If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . ." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. *See Mueller v. Aulker*, 700 F.3d 1180, 1191 (9th Cir. 2012); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

Here, Plaintiff has already been afforded three opportunities to amend his complaint. (*See* Doc. Nos. 12, 28, 38). Plaintiff has articulated the facts surrounding his alleged due process violation in ample detail and the Court can discern no set of additional facts that could be alleged to cure the deficiencies identified here. As the analysis above reflects, a change to Plaintiff's classification status, or denial of family visits and other prison programs does not trigger due process protections under either *Sandin* or state law. Moreover, because the Court finds that Defendants are entitled to qualified immunity, there are no additional facts Plaintiff could plead that could cure this deficiency. *See Reed v. Nevada*, 2021 WL 3722879, at *4 (D. Nev. Aug. 23, 2021) (finding leave to amend futile where defendants entitled to qualified immunity). Thus, the Court finds that granting Plaintiff further leave to amend would be futile.

////

////

ACCORDINGLY, it is **ORDERED**:

1. Defendants' Motion for Judicial Notice (Doc. No. 55-2) is GRANTED and the Court takes judicial notice of the following: California Code of Regulations, title 15, section 3177 (2015), Family Visiting (Overnight); California Code of Regulations, title 15, section 3375.2 (2015), Administrative Determinants; CDCR 2015 DOM, section 54020.33, Family Visiting General Information; CDCR 2015 DOM, section 54020.33.1, Inmate Family Visiting Eligibility; CDCR DOM, section 54020.33.2, Inmate Applications for Family Visits and CDCR DOM, section 61010.11.5, Placement.

2. Defendants' Motion to Dismiss (Doc. No. 55) is GRANTED and this case is dismissed with prejudice.

3. The Clerk shall enter judgment, terminate any pending motions as moot, and close this case.

Dated: September 30, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

14